IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CYNTHIA F.,

                Plaintiff,

vs.

FRANK BISIGNANO, Commissioner
of Social Security,

                Defendant.

4:25-CV-3111

MEMORANDUM AND ORDER

This matter is before the Court on the denial of plaintiff Cynthia F.'s application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. The Court has considered the parties' filings and the administrative record. For the reasons discussed below, the Court finds that the Commissioner's decision was supported by substantial evidence, so the plaintiff's motion for reversal (filing 13) will be denied, and the Commissioner's motion for an order affirming the decision (filing 14) will be granted.

## I. PROCEDURAL HISTORY

The plaintiff filed for disability insurance benefits on August 5, 2021, alleging disability beginning May 28, 2021. Filing 9-5 at 2. She later amended the alleged onset date to April 29, 2022. *See* filing 9-6 at 105. Her claim was denied initially in July 2022, filing 9-3 at 10, and on reconsideration in November 2022, filing 9-3 at 12. She requested a hearing before an administrative law judge (ALJ), which occurred on April 11, 2023. Filing 9-2 at 58. On May 16, 2023, the ALJ determined the plaintiff was not disabled within the meaning of the Social Security Act. Filing 9-3 at 23.

The Appeals Council remanded the ALJ's decision on January 11, 2024, for further consideration of the plaintiff's residual functional capacity (RFC) and

past relevant work. Filing 9-3 at 42. After a new hearing on June 6, 2024, the ALJ again found the plaintiff not disabled in a decision dated June 12, 2024. Filing 9-3 at 24, 64. The Appeals Council denied review of the second decision. Filing 9-2 at 2. The plaintiff now seeks the Court's review of the ALJ's June 2024 decision as the final decision of the administration. Filing 1.

## II. FACTUAL BACKGROUND

The plaintiff was born in 1966 and lives in Kearney, Nebraska, with her adult son and grandson. Filing 9-5 at 2; filing 9-2 at 36. She has three other adult children who do not live with her. She has worked as an office clerk in a now-closed payday loan office, a child care worker in a daycare, and a retail cashier. Filing 9-6 at 8. She has not worked since May 2021. *See id.* The plaintiff occasionally cares for her grandchildren. *See* filing 9-3 at 4; filing 9-6 at 34; filing 9-7 at 18. She has an 11th grade education and a GED. Filing 9-6 at 8; filing 9-2 at 65. The plaintiff initially reported her disabling medical conditions as hypothyroidism, peripheral neuropathy in both feet, hypertension, type 2 diabetes, and problems in both her eyes. Filing 9-6 at 7.

The plaintiff established care with Brittani Moeller, DO, on April 29, 2022, after she moved to Kearney. *See* filing 9-7 at 18. She reported a history of thyroid disease and uncontrolled type 2 diabetes mellitus. Filing 9-7 at 18, 24. She also reported shooting pain and cramps in both legs, but mostly her right leg. She also reported difficulty walking at times. Dr. Moeller refilled the reported medication and ordered lab work to determine if further changes were necessary. Filing 9-7 at 22. The plaintiff's hemoglobin A1C level was at 7.4%, which is considered diabetic. Filing 9-7 at 27.

On June 25, 2022, Edith Newsome, MD, performed a social security disability consultative examination. Filing 9-7 at 49. Dr. Newsome opined that there was evidence of decreased sensation in the plaintiff's feet and calves. She

2

also opined that the plaintiff's neuropathy was likely secondary to her diabetes and limited her ability to stand, walk, or carry. Dr. Newsome wrote that the plaintiff's diabetes was not well controlled, but her hypertension and hypothyroidism were stable, and the plaintiff denied eye problems. Filing 9-7 at 55-56. Dr. Newsome also noted a fatty lump or tumor on the plaintiff's leg/back area. Dr. Newsome opined that the plaintiff had limitations in sitting, standing, and walking, and could perform those actions "occasionally." Dr. Newsome found no limitations in lifting. Filing 9-7 at 56.

The plaintiff followed up with Dr. Moeller on August 1, 2022. She did not have a glucometer and said she was not checking her blood sugar or blood pressure. Filing 9-7 at 57. The plaintiff also reported continuing tingling in her feet and toes, and that she felt fatigued taking the medication for her hypertension. Filing 9-7 at 58. Dr. Moeller ordered a glucometer and started the plaintiff on Gabapentin for her neuropathy. Filing 9-7 at 57. The plaintiff's A1C was stable at 7.4%. Filing 9-7 at 60.

The plaintiff returned to Dr. Moeller in November 2022. She asked about a fatty lump or tumor on her leg or back that had been there since birth. Dr. Moeller told the plaintiff that she would "work on" ordering an ultrasound for the plaintiff's leg. The plaintiff also reported she had low blood sugar; Dr. Moeller expected hypoglycemia episodes secondary to her prescriptions, not eating, and increased physical activity. Filing 9-7 at 61. The plaintiff's A1C was improved, at 6.9%. Filing 9-7 at 70.

At her annual exam on February 8, 2023, the plaintiff reported she was struggling with weight gain and was having trouble walking due to pain in her feet, hip, and back. Dr. Moeller increased the plaintiff's Trulicity prescription to help control her diabetes, and increased the Gabapentin dosage. Otherwise, the plaintiff was generally doing well. Filing 9-7 at 128.

At that appointment, the plaintiff asked Dr. Moeller to provide an opinion

for the plaintiff's disability claim. Dr. Moeller provided a written opinion that the plaintiff could maintain attention for thirty minutes to one hour, but was limited to thirty minutes of sitting or standing. She also opined the plaintiff could never balance, kneel, crouch or crawl, could rarely stoop, and could frequently lift up to twenty pounds. Filing 9-7 at 84.

The plaintiff's first hearing before the ALJ was on April 11, 2023. The plaintiff reporting burning and pain in her back that made it difficult to walk or sit. Filing 9-2 at 70, 73-74. She said that in the past, she would watch her grandchildren in the summer, but it was now too difficult. *See* filing 9-2 at 71. She also said she could only sit down for 25 minutes before she would need to get up and stretch, partially due to the fatty lump that would start to hurt if she sat too long. *See* filing 9-2 at 74.

On May 8, 2023, Abby Richardson, MD, tested the plaintiff's A1C and recommended a lipid panel in three months. The plaintiff's hypertension and hypothyroidism were stable. Dr. Richardson prescribed Meloxicam for suspected osteoarthritis when the plaintiff reported stiffness and soreness in her hands. Filing 9-7 at 133.

At her diabetes follow-up with Dr. Moeller in November 2023, the plaintiff said she was not checking her blood sugar. Dr. Moeller ordered labs, and the plaintiff's A1C was high. The plaintiff also reported depression and anxiety related to her weight gain, but was uninterested in medication or other treatment. Filing 9-7 at 141. On April 5, 2024, the plaintiff again reported depression and anxiety, and Dr. Moeller prescribed BuSpar. Filing 9-7 at 100. The plaintiff said she was not taking her prescribed Trulicity. Filing 9-7 at 103. Her A1C levels remained high. Filing 9-7 at 106.

On June 6, 2024, the plaintiff had her second hearing before the ALJ. The plaintiff said that the pain in her back and feet, and her fatty tumor, made walking difficult, and sometimes she had trouble getting out of bed. Filing 9-2 at

4

42. The plaintiff said she could walk about a block. A vocational expert categorized the plaintiff's past work as an office clerk as a "credit clerk," a sedentary job. The vocational expert testified that a hypothetical person who could sit for six hours out of an eight our day, could lift or carry ten pounds occasionally or frequently, and could perform occasional postural activities, would be able to return to work as a sedentary-level "credit clerk." Filing 9-2 at 51. The expert testified that a credit clerk would allow flexibility in walking and standing, and a person could do the job if she needed to alternate sitting or standing every twenty minutes. Filing 9-2 at 54.

### SEQUENTIAL ANALYSIS AND ALJ FINDINGS

### (a) Steps One and Two

The ALJ found that the plaintiff was not disabled and she was not entitled to benefits.[1] Filing 9-3 at 48. To determine whether a claimant qualifies for disability benefits, an ALJ performs a five-step sequential analysis of the claim. 20 C.F.R. § 404.1520(a)(4). At the first step, a claimant has the burden to establish that she has not engaged in substantial gainful activity since the alleged disability onset date. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); § 404.1520(a)(4)(i).

Regarding step one, the ALJ found that the plaintiff met the insured status requirement of the Social Security Act through December 31, 2026, and that the plaintiff had not engaged in substantial gainful activity since April 29, 2022, the plaintiff's alleged onset date. Filing 9-3 at 50.

At step two, the medical severity of a claimant's impairment is considered. § 404.1520(a)(4)(ii). The claimant has the burden to prove a medically determinable physical or mental impairment, or combination of impairments,

---

[1] Only the operative ALJ opinion, from June 12, 2024, is detailed in this Order.

that significantly limits her physical or mental ability to perform basic work activity. *Gonzales*, 465 F.3d at 894.

The ALJ found the plaintiff's obesity and diabetes mellitus with peripheral neuropathy of feet were severe medically determinable impairments. Filing 9-3 at 51. The ALJ found the plaintiff's complaint of back pain related to her fatty tumor was a nonsevere impairment. The plaintiff's "isolated complaints" of hand pain lacked clinical concerns, and the plaintiff's hypertension and hyperthyroidism were well-managed with medication and conservative care. Filing 9-3 at 51. The ALJ also determined the plaintiff's reported vision deficits, depression, and anxiety were not medically determinable impairments due to the lack of medical evidence in the record. Filing 9-3 at 52.

### (b) Steps Three, Four, and Five

At step three, the medical severity of a claimant's impairments is further considered. § 404.1520(a)(4)(iii). If a claimant's impairments meet or equal a presumptively disabling impairment listed in the regulations, the analysis ends, and a claimant is automatically found disabled and entitled to benefits. *Gonzales*, 465 F.3d at 894. The ALJ found that the plaintiff's impairments, considered singly or in combination, did not meet or equal any specific listing. Filing 9-3 at 52. The plaintiff did not allege, nor did any of her providers opine, that the plaintiff had any presumptively disabling impairments. The ALJ considered the plaintiff's neuropathy, and determined that, because there were no clinical findings involving her sensation, gait, or motor function, she did not have an extreme limitation as required in listing 11.4. Filing 9-3 at 52.

At step four, a claimant has the burden to prove that she lacks the RFC to perform her past relevant work. *Gonzales*, 465 F.3d at 894; §§ 416.920(a)(4)(iv) & (f), 404.1520(a)(4)(iv) & (f). If a claimant can still do her past relevant work, she will be found to be not disabled; otherwise, the analysis proceeds to step five. At

6

step five, the burden shifts to the Commissioner to prove, considering a claimant's RFC, age, education, and work experience, that there are other jobs in the national economy that a claimant can perform. *Gonzales,* 465 F.3d at 894; §§ 416.920(a)(4)(v) & (g), 404.1520(a)(4)(v) & (g).

At step four, the ALJ found that the plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except she is able to lift ten pounds occasionally and less than ten pounds frequently, and she can sit six hours in an eight-hour workday and can stand or walk two hours in an eight-hour workday. The RFC included a limitation that the plaintiff must stretch for five minutes after sitting for 30 minutes. And, the ALJ found that the plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but can never climb ladders, ropes, or scaffolds at work. The ALJ also determined the plaintiff can perform work that does not involve concentrated exposure to vibration or hazards such as unprotected heights. Filing 9-3 at 53.

The ALJ determined the plaintiff's history of neuropathy was not accompanied by any change in gait or motor function, and the plaintiff's contention that she was unable to sit or stand without significant absenteeism was not consistent with her self-reported good response to conservative care. Filing 9-3 at 56. The medical record also lacked updated imaging, EMG, specialized care, pain management, or physical therapy indicating worsening pain or other disabling symptoms. The ALJ determined that the plaintiff's reports of back pain were isolated, related to when she worked at a daycare or provided care for her grandchildren, and did not indicate that the plaintiff would be unable to perform sedentary work. Filing 9-3 at 57.

The ALJ considered the opinions of Dr. Newsome, the consultative physician, and Dr. Moeller, the plaintiff's treating physician. The ALJ determined Dr. Newsome's opinion was unpersuasive because the limitations provided were inconsistent with Dr. Newsome's own clinical findings, and were

inconsistent with the updated evidence in the record. Filing 9-3 at 61.

Dr. Moeller's opinion was likewise found to be unpersuasive because Dr. Moeller did not provide any clinical findings, and the ALJ found her reported limitations were inconsistent with both her own clinical exams and the plaintiff's self-reported good response to conservative care. Filing 9-3 at 61. The ALJ also found that Dr. Moeller's opinion was internally inconsistent and lacked a basis in care. Filing 9-3 at 62.

The ALJ also considered the state agency medical consultants' opinions. The ALJ found those opinions were aligned with the plaintiff's "consistently good motor function on exam" despite her isolated complaints of pain, and their opinions were aligned with the absence of testing, imaging, pain management, physical therapy, or emergent care. However, the ALJ found the opinions not persuasive because the consultants "did not have the opportunity to support their findings by their own exam nor the opportunity to review the updated treatment record." Filing 9-3 at 62.

While the record evinced some indication the plaintiff had mental health problems, she did not go to the scheduled mental examination, and told the consultant "she did not go because there is nothing mentally wrong." Filing 9-3 at 6. The ALJ, therefore, did not consider any mental limitations in the plaintiff's RFC. *See* filing 9-3 at 62-63.

The ALJ determined the plaintiff could perform her past relevant work as a "credit clerk." Filing 9-3 at 63. The ALJ relied on the vocational expert's testimony, which was consistent with the Dictionary of Occupational Titles, and the vocational expert's reliance on their professional training and experience. Therefore, the ALJ found that the plaintiff was not disabled as defined in the Act.

## III. STANDARD OF REVIEW

The Court reviews a denial of benefits by the Commissioner for errors of

8

law and to determine whether the denial is supported by substantial evidence on the record as a whole. *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citing 42 U.S.C. § 405(g)). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion. *Id*.

The Court considers the entire administrative record—the evidence that detracts from the decision, as well as the evidence that supports it—but the evidence is not reweighed. *See id*. Instead, the Court will disturb the ALJ's decision only if it falls outside the available "zone of choice.*" Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021). If the record contains evidence that a reasonable person might accept as adequate to support the ALJ's conclusion, the Court may not reverse—even if it would reach a different conclusion, or merely because there is also evidence that might support a contrary outcome. *See id*.; *Byes*, 687 F.3d at 915. The Court reviews for substance over form: an arguable deficiency in opinion-writing technique does not require the Court to set aside an administrative finding when that deficiency had no bearing on the outcome. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011).

## IV. DISCUSSION

The plaintiff asserts[2] that the ALJ's determination that the plaintiff is not disabled was not supported by substantial evidence. She argues the ALJ "failed to properly evaluate the medical opinion of Dr. Moeller" because she failed to explain why her opinion was inconsistent with the medical record, and she failed to explain why her opinion was not supported. Filing 13 at 6.

---

[2] The plaintiff's counsel is advised that this Court's local rules require a brief to be filed "separate from, and not attached to or incorporated in, the motion" which the brief supports. NECivR 7.1(a)(1)(A).

9

Pursuant to 20 C.F.R. § 404.1520c, an ALJ must explain how she considered a medical opinion's consistency and supportability in evaluating its persuasiveness. *See Bonnett v. Kijakazi,* 859 F. App'x 19 (8th Cir. 2021). Consistency refers to how consistent a medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim," not consistency within the medical opinion itself. § 404.1520c(c)(2). Supportability refers to whether the objective medical evidence and provided explanations support the opinion's conclusions. § 404.1520c(c)(1). An ALJ need not specifically use the words "supportability" or "consistency," but she must articulate the reasons why an opinion is given a particular weight. *See Buckner,* 646 F.3d at 559.

The plaintiff first argues that the ALJ failed to assess whether Dr. Moeller's opinion was consistent with other medical or nonmedical sources. Such sources in this case are sparse—a vast majority of the medical records come from Dr. Moeller, supplemented by a few consultative examinations. In assessing the plaintiff's RFC, the ALJ made frequent note of the lack of clinical tests or treatments supporting the plaintiff's subjective complaints of pain or limitations.

The ALJ wrote that Dr. Moeller's opinion was not consistent with the plaintiff's "self-reported good response to conservative care." Filing 9-3 at 61. The plaintiff argues that self-reported response was from Dr. Moeller's own records, and a proper consistency evaluation requires assessing records beyond the opining source. Filing 13 at 8. However, the ALJ observed that the plaintiff was responding well to conservative care on several occasions, including in her testimony at the June 2024 hearing and her initial disability function report from November 2022. Filing 9-3 at 56-57. The ALJ properly compared Dr. Moeller's opinion to the limited other sources available in the record. While the ALJ could have been more specific, her "arguable deficiency in opinion-writing technique . . . had no bearing on the outcome" of the decision, and does not require remand. *See Buckner,* 646 F.3d at 560.

10

The plaintiff also argues the ALJ mischaracterized the evidence, because the medical records indicate it was the plaintiff's hypertension that responded well to conservative care, not her neuropathy or diabetes. The ALJ found that Dr. Moeller's opinion "did not provide any clinical findings" and her opinion was "without a basis in care." Filing 9-3 at 61. Considering whether objective medical evidence supports an opinion is a proper basis on which an ALJ can rely. *See* § 404.1520c(c)(1).

The Court is not persuaded that the ALJ mischaracterized the medical record. The plaintiff's A1C levels were generally stable (and improving), except when the plaintiff stopped taking her prescribed medication. *See* filing 9-7 at 27 (7.4% on Apr. 29, 2022); filing 9-7 at 60 (7.4% on Aug. 1, 2022); filing 9-7 at 70 (6.9% on Nov. 8, 2022); filing 9-7 at 153 (6.5% on Feb. 8, 2023). Medication also improved her pain. *See* filing 9-7 at 128. The plaintiff's regular visits with her doctors did not indicate any acute distress, and the plaintiff consistently reported doing well enough that only routine tests and moderate changes to her medication regimen were warranted. The ALJ's interpretation of the medical record is supported by substantial evidence.

The ALJ properly considered both the supportability and consistency of Dr. Moeller's opinion. The ALJ's determination is supported by substantial evidence, and the Commissioner's final decision is affirmed.

IT IS ORDERED:

1.   The plaintiff's motion for reversal of the Commissioner's final decision (filing 13) is denied.

2.   The Commissioner's motion to affirm the Commissioner's final decision (filing 14) is granted.

3.     This case is dismissed.

4.     A separate judgment will be entered.

Dated this 15th day of July, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

12